```
 1
 2
 3
 4
 5
 6
 7
 8                    UNITED STATES DISTRICT COURT
 9                   EASTERN DISTRICT OF CALIFORNIA
10                            ----oo0oo----
11
12  MARCIAL VILLARINO III,          NO. CIV. 2:12-cv-00889 (PS) WBS JFM
13          Plaintiff,
                                    MEMORANDUM AND ORDER RE:
14      v.                          MOTION TO DISMISS
15  SPECIALIZED LOAN SERVICING LLC
    (SLS), MERS, and DOES 1-100
16  inclusive,
17          Defendants.
                                   /
18
19                            ----oo0oo----
20          Plaintiff Marcial Villarino III filed suit in state
21  court against defendants Specialized Loan Servicing LLC ("SLS")
22  and Mortgage Electronic Registration Systems, Inc. ("MERS"),[1]
23  bringing claims arising from defendants' allegedly wrongful
24  conduct related to a residential loan.  Defendants then removed
25  the case to this court on the basis of diversity jurisdiction.
```

---

[1] Plaintiff erroneously sued Mortgage Electronic Registration Systems, Inc., as "MERS." (Notice of Removal 2:6-7 (Docket No. 2-1).)

1

(Docket No. 2.)  Currently before the court is defendants' motion to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket No. 7.)

I.   Factual and Procedural Background

In 2005, plaintiff and his wife, Patricia Villarino, obtained a loan from Ameriquest Mortgage Company ("Ameriquest") in the amount of $608,000.  (Notice of Removal Ex. D ("Compl.") ¶ 6 (Docket No. 2-2); Defs.' Req. for Judicial Notice ("RJN") Ex. 3 (Docket No. 9).)  The loan agreement was secured by a Deed of Trust recorded against the property located at 6051 Penela Way in El Dorado Hills, California ("the Penela Way property").[2]  (RJN Ex. 3.)  U.S. Bank National Association was assigned the Deed of Trust in March 2005.  (Id. Ex. 4.)

A Notice of Default listing the current default as $18,193.97 was recorded on December 13, 2011, and a Notice of Trustee's Sale for April 5, 2012, was recorded on March 15, 2012.  (Id. Exs. 5, 7.)

In his Complaint, plaintiff alleges that he entered into a contract with SLS and the other defendants.  (Compl. ¶ 11.)  The allegations stemming from this contract primarily focus on defendants' interference with plaintiff's "rights and benefits under the contract," (id. ¶¶ 11-13), and failure to secure plaintiff a loan modification, (id. ¶¶ 14, 18).  In particular, plaintiff alleges that defendants drastically inflated late fees

---

[2]   Plaintiff and his wife obtained an additional loan for $152,000, secured with a Deed of Trust on the same property, (RJN Ex. 2.), which is not the subject of this action.

2

and penalties, lost paperwork, and took "exorbitant" amounts of time to review documents.  (Id. ¶ 18.)  Defendants also allegedly failed to modify plaintiff's loan after he "made a good faith effort to apply for assistance" and threatened foreclosure proceedings and sale of his home.  (Id.)

Plaintiff next alleges that defendants breached their duty of care "to ensure that Plaintiff's contractual rights would be protected, and specifically that the borrowers would be eligible for the HAMP program or any other traditional modification programs available."[3]  (Id. ¶¶ 14-15.)  Relatedly, plaintiff also alleges to have suffered emotional distress. First, defendants are alleged to have had a duty "to honor the contractual rights of plaintiff to receive the benefits of the HAMP program" and were negligent in failing to communicate with plaintiff concerning modification of his loan.  (Id. ¶¶ 29-30.) By alerting plaintiff that his home could potentially be foreclosed on, as well as sending letters and making phone calls threatening to remove him from his home, defendants led plaintiff to "a state of emotional panic."  (Id. ¶¶ 29-32.)  Second, defendants are alleged to have "engaged in a negligent and unlawful course of conduct solely to wrongfully obtain money and property from Plaintiff" that has resulted in "severe emotional anguish."  (Id. ¶ 33.)

---

[3]  HAMP refers to the "Home Affordable Modification Program," a federal loan modification program.  See, e.g., Lucia v. Wells Fargo Bank, N.A., 798 F. Supp. 2d 1059, 1062 (N.D. Cal. 2011) (explaining that HAMP "provide[s] relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable reduced levels, without discharging any of the underlying debt").

3

1    Finally, plaintiff alleges that MERS is the vehicle through which "[d]efendants have accomplished their illegal objectives." (Id. ¶ 22)  Defendants allegedly used MERS to put "intentionally ambiguous and infinitely malleable provisions pertaining to MERS" in new mortgages, (id. ¶ 21), and to ensure that "the average consumer, or even legal professional, can never determine who or what was or is ultimately receiving the benefits of any mortgage payments," (id. ¶ 23).  Apparently through the "artifice" of MERS, defendants are alleged to have transformed and "sabotage[d]" the legal system to prevent borrowers from obtaining redress.  (Id. ¶¶ 25-26.)  Although plaintiff alleges that MERS is neither the original lender of plaintiff's loan nor its current beneficiary or servicer, he contends that MERS "has been and continues to knowingly and intentionally illegally and fraudulently record mortgages and conduct business in California" for some of the defendants.  (Id. ¶ 27.)

     Plaintiff brings claims for (1) breach of contract, (2) negligence, (3) breach of the implied covenant of good faith and fair dealing, (4) negligent inflection of emotional distress, (5) intentional inflection of emotional distress, and (6) injunctive relief.  Defendants now move to dismiss all claims for failure to state a claim pursuant to Rule 12(b)(6).  (Docket No. 7.) Plaintiff failed to file an opposition or statement of non-opposition as required by Local Rule 230(c).

II.  Request for Judicial Notice

     In general, a court may not consider items outside the pleadings when deciding a motion to dismiss, but it may consider items of which it can take judicial notice.  Barron v. Reich, 13

4

1  F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial
2  notice of facts "not subject to reasonable dispute" because they
3  are either "(1) generally known within the territorial
4  jurisdiction of the trial court or (2) capable of accurate and
5  ready determination by resort to sources whose accuracy cannot
6  reasonably be questioned."  Fed. R. Evid. 201.  Judicial notice
7  may properly be taken of matters of public record outside the
8  pleadings.  See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504
9  (9th Cir. 1986).

10  Defendants request that the court judicially notice
11 several recorded documents pertaining to the Penela Way property.
12 (See RJN Exs. 1-7.)  The court will take judicial notice of these
13 documents, since they are matters of public record whose accuracy
14 cannot be questioned.  See Lee v. City of Los Angeles, 250 F.3d
15 668, 689 (9th Cir. 2001).  The court will also take judicial
16 notice of the plaintiff's bankruptcy court filing, see RJN Ex. 8,
17 because it likewise is a matter of public record whose accuracy
18 cannot be questioned.  See Rosal v. First Fed. Bank of Cal., 671
19 F. Supp. 2d 1111, 1121 (N.D. Cal. 2009) (taking judicial notice
20 of bankruptcy filings).

21 III. Discussion

22  To survive a motion to dismiss, a plaintiff must plead
23 "only enough facts to state a claim to relief that is plausible
24 on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
25 (2007).  This "plausibility standard," however, "asks for more
26 than a sheer possibility that a defendant has acted unlawfully,"
27 Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a
28 complaint pleads facts that are 'merely consistent with' a

5

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). In deciding whether a plaintiff has stated a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).

### A. Claims Against MERS

"MERS is a private electronic database, operated by MERSCORP, Inc., that tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1038 (9th Cir. 2011). Recently, the Ninth Circuit, "far from concluding that MERS was some sort of sham organization," instead determined "that MERS was a legitimate organization." Velasco v. Sec. Nat. Mortg. Co., 823 F. Supp. 2d 1061, 1073 (D. Haw. 2011); see Cervantes, 656 F.3d at 1041-42 (dismissing with prejudice plaintiff's fraud claim based on allegations "that MERS members conspired to commit fraud by using MERS as a sham beneficiary, promoting and facilitating predatory lending practices through the use of MERS, and making it impossible for borrowers or regulators to track the changes in lenders"). Despite the Complaint's extended exposition of MERS and its alleged role in thwarting the legal system to the detriment of borrowers, the Complaint's generalized and conclusory allegations of conspiracy and subversion are insufficient to meet federal

6

pleading standards.

Moreover, plaintiff explicitly states that MERS is not the beneficiary of his home loan and does not allege any other role for MERS concerning the loan at issue, such as serving as the loan servicer.  (See Compl. ¶ 27.)  None of plaintiff's six causes of action are directed at MERS, and he does not provide any factual allegations giving rise to any specific claim against MERS.  Accordingly, the court will dismiss the Complaint as against MERS.

     B.    <u>Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

The Complaint's first and third claims are entitled, respectively, "Breach of Contract" and "Bad Faith/Breach of Contract."  Thereunder, plaintiff alleges that he entered into a contract with SLS and the other defendants.  (Id. ¶ 11.)  "Implicit in the contract," he alleges, was the obligation "not to markup charges for work they did not perform or to seek payment for services which defendants were not entitled."  (Id. ¶ 12.)  Moreover, defendants "would, in good faith and in exercise of fair dealing, deal with plaintiff's [sic] fair[ly] and honestly."  (Id. at ¶ 12.)  SLS is alleged to have breached the contract and the implied covenant of good faith and fair dealing by charging "marked-up fees for late charges."  (Id.)

Plaintiff also alleges that SLS drastically inflated late fees and penalties, lost paperwork, and took "exorbitant" amounts of time to review documents.  (Id. ¶ 18.)  SLS allegedly also failed to modify plaintiff's loan after he "made a good faith effort to apply for assistance" and threatened foreclosure

7

proceedings and sale of his home.  (Id.)

In order to state a claim for breach of contract, the plaintiff must allege facts that demonstrate: 1) the existence of the contract, 2) plaintiff's performance or excuse for nonperformance of the contract, 3) defendant's breach, and 4) resulting damages. Armstrong Petrol. Corp. v. Tri Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1391 n.6 (5th Dist. 2004).

It is not sufficient for a plaintiff to merely allege conduct that could conceivably give rise to a claim. Twombly, 550 U.S. at 547.  Rather, he must allege "enough facts to state a claim to relief that is plausible on its face." Id.  Here, plaintiff has failed to properly allege the basis for his contract claims.  It is possible that he means to allege that SLS owed him a duty on the basis of the loan agreement that he entered into with Ameriquest.  Even if plaintiff's bare pleadings are construed in this manner, the court does not see how SLS can be said to owe plaintiff a duty based upon a contract to which it was not a party.

Nor has plaintiff identified any other specific agreement creating a contractual relationship between him and SLS.  To merely allege the existence of a contract is to make the kind of conclusory allegation that Iqbal and Twombly disapproved. See Zody v. Microsoft Corp., No. Civ. 12-CV-00942-YGR, 2012 WL 1747844, at *4 (N.D. Cal. May 16, 2012) (citing Twombly, 550 U.S. at 555) ("To the extent that Plaintiff simply alleges a contract existed, that allegation is itself conclusory because the contract's formation and its terms (among other things) are unclear").  Plaintiff fails to allege "a clear articulation of

8

the factual basis" for the contract, id., such as specifying its alleged terms or even indicating whether the contract was written or oral, see Snyder v. Wachovia Mortg., No. Civ. 1:10-1168 LJO SKO, 2010 WL 2736945, at *4 (E.D. Cal. July 12, 2010) (dismissing breach of contract claim where failure "to indicate whether the alleged agreement was written or oral . . . further doom[ed] the claim"); Gilmore v. Lycoming Fire Ins. Co., 55 Cal. 123, 124 (1880) ("Where a party relies upon a contract in writing, and it affirmatively appears that all the terms of the contract are not set forth in haec verba, nor stated in their legal effect, but that a portion which may be material has been omitted, the complaint is insufficient.").

        Plaintiff also does not specify how the actions allegedly taken by SLS, such as charging late fees and penalties or failing to modify plaintiff's loan, breached any specific provision of the alleged contract. The Complaint is devoid of allegations describing what work SLS did not perform that plaintiff was charged for, or what activities SLS sought payment for that it was unentitled to. Without such allegations, plaintiff cannot "nudge[] [his] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 547.

        "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999) (quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371 (1992)). However, a "prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between

9

the parties, since the covenant is an implied term in the contract." Smith v. City & Cnty. of San Francisco, 225 Cal. App. 3d 38, 49 (1st Dist. 1990). As just explained, plaintiff has failed to specify with sufficient particularity the contract which he alleges SLS breached. Identification of the contract is essential "to determine what benefits were intended to flow from it before deciding whether a party has acted to impair the right of the other to receive those benefits." Rodriquez v. OneWest Bank, No. Civ. 09-2361-PHX-NVW, 2010 WL 550760, at *3 (D. Ariz. Feb. 16, 2010). As is, the Complaint's conclusory allegations fail to identify a contractual relationship in which to imply the covenant of good faith and fair dealing. Without a discernable contractual basis for plaintiff's claims, it is impossible to know whether the actions alleged to have been taken by SLS--such as charging late fees, losing paperwork, or delaying document review--injured plaintiff's rights under the contract.

Accordingly, the court will grant SLS's motion to dismiss plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

C.  Negligence

To prove a cause of action for negligence, plaintiff must show "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339 (2d Dist. 1998). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." Vasquez v. Residential Invs., Inc., 118 Cal. App. 4th 269, 278 (4th Dist.

10

2004). Plaintiff bases its negligence cause of action on allegations that defendants "owed a common law and statutory duty of care to the Plaintiff's [sic] to ensure that Plaintiff's contractual rights would be protected" and that he "would be eligible for the HAMP program" or other loan modification program. (Compl. ¶ 14.) Plaintiff also alleges injury from defendants' "negligence due to the underwriting guidelines used to administer and fund their loan." (Id. ¶ 16.)

Plaintiff cites no authority for the proposition that SLS owed a duty to not cause plaintiff harm in its capacity as a loan servicer. Cf. Castaneda v. Saxon Mortg. Servs., Inc., 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009) (concluding that a loan servicer owed no duty of care to the plaintiff). In the broader lending setting, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Assn., 231 Cal. App. 3d 1089, 1096 (3d Dist. 1991). Courts have extended this rule to loan servicers. See, e.g., Saugstad v. Am. Home Mortg. Servicing Inc., No. Civ. 2:09-CV-03516 JAM KJM, 2010 WL 2991724, at *4 (E.D. Cal. July 29, 2010); Tsien v. Wells Fargo Home Mortg., No. Civ. 09-04790 SI, 2010 WL 2198290, at *5 (N.D. Cal. May 28, 2010). Thus, as the servicing company to the lender, SLS owes no duty to plaintiff. Because the Complaint fails to state that SLS has breached a cognizable legal duty, the court will grant defendants' motion to dismiss plaintiff's cause of action for negligence.

     D.   Negligent Infliction of Emotional Distress

11

The negligent infliction of emotional distress is not an independent tort, but rather derives from the tort of negligence. Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc., 48 Cal.3d 583, 588 (1989). Thus, all the traditional elements of duty, breach of duty, causation, and damages must be proven by plaintiff. See id.

Plaintiff styles this cause of action "Negligent Infliction of Emotional Anguish" and alleges that SLS breached its duty to plaintiff "by failing to communicate with Plaintiff in regards to modifying the [l]oan, acting negligent, and creating an alleged deficiency status," (Compl. ¶ 30), as well as by putting plaintiff into a "state of emotional panic" by sending him "notices to accelerate the note and of his potentially being foreclosed upon and sold," (id. ¶ 31).

As explained, lender-loan servicer relations do not usually engender a duty supporting a negligence cause of action. See Palestini v. Homecomings Fin., LLC, Civ. No. 10CV1049-MMA, 2010 WL 3339459, at *7 (S.D. Cal. Aug. 23, 2010). Here, plaintiff fails to allege that SLS engaged in any conduct that exceeded the traditional role of a loan servicer. Because plaintiff has failed to establish the assumption of a duty of care on the part of SLS, the court must grant SLS's motion to dismiss plaintiff's negligent infliction of emotional distress claim.

E.   Intentional Infliction of Emotional Distress

Under California law, to state a cause of action for intentional infliction of emotional distress, a plaintiff must plead: "(1) extreme and outrageous conduct by the defendant with

12

the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991) (quoting Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982)).  Conduct is "extreme and outrageous" when it "exceed[s] all bounds usually tolerated by a decent society." Palestini, 2010 WL 3339459, at *5 (quoting Agarwal v. Johnson, 25 Cal. 3d 932, 946 (1979)).  Emotional distress is "severe" when it is "of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397 (4th Dist. 1970).  The defendant's conduct must have been intended to inflict injury or be done with the realization that injury will result. Christensen, 54 Cal. 3d at 903.  Moreover, the defendant's conduct must have been "directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." Id.

     Incorporating all the allegations in his Complaint, plaintiff entitles this claim "Intentional Infliction of Mental Anguish" and alleges that SLS's conduct "was extreme and outrageous and an abuse of the position of the Defendants." (Compl. ¶ 33.)  Plaintiff also alleges that SLS engaged "in a negligent and unlawful course of conduct solely to wrongfully obtain money and property from Plaintiff." (Id.)

     The Complaint fails to allege any outrageous conduct on the part of SLS to support intentional inflection of emotional

13

distress.  Plaintiff does no more than allege that SLS engaged in conduct that is generally accepted in debt collection and the foreclosure process, such as increased fees or telephone calls to the debtor alerting him to the risks associated with failing to make due payments.  See Ramirez v. Barclays Capital Mortg., No. Civ. 10-1039 LJO SKO, 2010 WL 2605696, at *11 (E.D. Cal. June 28, 2010) (noting that the conduct associated with debt collection and the foreclosure process "is inherently stressful for debtors"); Ross v. Creel Printing & Publ'g Co., 100 Cal. App. 4th 736, 745 (1st Dist. 2002) ("In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress.").  Moreover, the refusal to grant a loan modification, even after meeting with the borrower, does not qualify as outrageous behavior.  Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010).  Accordingly, the court will grant SLS's motion to dismiss plaintiff's intentional infliction of emotional distress claim.

    F.   Injunctive Relief

        Under California law, requests for injunctive relief have been consistently classified as remedies and not valid causes of action in their own rights.  See, e.g., Shell Oil Co. v. Richter, 52 Cal. App. 2d 164, 168 (4th Dist. 1942) ("Injunctive relief is a remedy and not, in itself, a cause of action.").  Accordingly, the court will grant SLS's motion to dismiss plaintiff's sixth cause of action.

        IT IS THEREFORE ORDERED that defendants' motion to dismiss be, and the same hereby is, GRANTED.

         Plaintiff has ten days from the date of this Order to file an amended complaint, if he can do so consistent with this Order.[4]

DATED:    October 9, 2012

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[4] The court does not adopt the Findings and Recommendations of the Magistrate Judge, filed July 23, 2012 (Docket No. 16), and issues this Memorandum and Order in lieu thereof.

15