UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MARCIAL VILLARINO III,                    NO. CIV. 2:12-cv-00889 (PS) WBS JFM

      Plaintiff,
                                          MEMORANDUM AND ORDER RE:
   v.                                   MOTION TO DISMISS

SPECIALIZED LOAN SERVICING LLC
(SLS), MERS, and DOES 1-100
inclusive,

      Defendants.
_____/

----oo0oo----

       Plaintiff Marcial Villarino III filed suit in state court against defendants Specialized Loan Servicing LLC ("SLS") and Mortgage Electronic Registration Systems, Inc. ("MERS"),[1] bringing claims arising from defendants' allegedly wrongful conduct related to a residential loan.  Defendants then removed the case to this court on the basis of diversity jurisdiction.

_____

   [1]   Plaintiff erroneously sued Mortgage Electronic Registration Systems, Inc., as "MERS."  (Notice of Removal 2:6-7 (Docket No. 2-1).)

1

1  (Docket No. 2.)  Currently before the court is defendants' motion

2  to dismiss the Complaint in its entirety for failure to state a

3  claim upon which relief can be granted pursuant to Federal Rule

4  of Civil Procedure 12(b)(6).  (Docket No. 7.)

5  I.   Factual and Procedural Background

6        In 2005, plaintiff and his wife, Patricia Villarino,

7  obtained a loan from Ameriquest Mortgage Company ("Ameriquest")

8  in the amount of $608,000.  (Notice of Removal Ex. D ("Compl.") ¶

9  6 (Docket No. 2-2); Defs.' Req. for Judicial Notice ("RJN") Ex. 3

10  (Docket No. 9).)  The loan agreement was secured by a Deed of

11  Trust recorded against the property located at 6051 Penela Way in

12  El Dorado Hills, California ("the Penela Way property").[2]  (RJN

13  Ex. 3.)  U.S. Bank National Association was assigned the Deed of

14  Trust in March 2005.  (Id. Ex. 4.)

15        A Notice of Default listing the current default as

16  $18,193.97 was recorded on December 13, 2011, and a Notice of

17  Trustee's Sale for April 5, 2012, was recorded on March 15, 2012.

18  (Id. Exs. 5, 7.)

19        In his Complaint, plaintiff alleges that he entered

20  into a contract with SLS and the other defendants.  (Compl. ¶

21  11.)  The allegations stemming from this contract primarily focus

22  on defendants' interference with plaintiff's "rights and benefits

23  under the contract," (id. ¶¶ 11-13), and failure to secure

24  plaintiff a loan modification, (id. ¶¶ 14, 18).  In particular,

25  plaintiff alleges that defendants drastically inflated late fees

26

27        [2]   Plaintiff and his wife obtained an additional loan for
   $152,000, secured with a Deed of Trust on the same property, (RJN
28  Ex. 2.), which is not the subject of this action.

2

1 and penalties, lost paperwork, and took "exorbitant" amounts of
2 time to review documents. (Id. ¶ 18.)  Defendants also allegedly
3 failed to modify plaintiff's loan after he "made a good faith
4 effort to apply for assistance" and threatened foreclosure
5 proceedings and sale of his home. (Id.)

6      Plaintiff next alleges that defendants breached their
7 duty of care "to ensure that Plaintiff's contractual rights would
8 be protected, and specifically that the borrowers would be
9 eligible for the HAMP program or any other traditional
10 modification programs available."[3] (Id. ¶¶ 14-15.)  Relatedly,
11 plaintiff also alleges to have suffered emotional distress.
12 First, defendants are alleged to have had a duty "to honor the
13 contractual rights of plaintiff to receive the benefits of the
14 HAMP program" and were negligent in failing to communicate with
15 plaintiff concerning modification of his loan. (Id. ¶¶ 29-30.)
16 By alerting plaintiff that his home could potentially be
17 foreclosed on, as well as sending letters and making phone calls
18 threatening to remove him from his home, defendants led plaintiff
19 to "a state of emotional panic." (Id. ¶¶ 29-32.)  Second,
20 defendants are alleged to have "engaged in a negligent and
21 unlawful course of conduct solely to wrongfully obtain money and
22 property from Plaintiff" that has resulted in "severe emotional
23 anguish." (Id. ¶ 33.)

24

25      [3]   HAMP refers to the "Home Affordable Modification
26 Program," a federal loan modification program. See, e.g., Lucia
   v. Wells Fargo Bank, N.A., 798 F. Supp. 2d 1059, 1062 (N.D. Cal.
27 2011) (explaining that HAMP "provide[s] relief to borrowers who
   have defaulted on their mortgage payments or who are likely to
28 default by reducing mortgage payments to sustainable reduced
   levels, without discharging any of the underlying debt").

1    Finally, plaintiff alleges that MERS is the vehicle

2  through which "[d]efendants have accomplished their illegal

3  objectives." (Id. ¶ 22)  Defendants allegedly used MERS to put

4  "intentionally ambiguous and infinitely malleable provisions

5  pertaining to MERS" in new mortgages, (id. ¶ 21), and to ensure

6  that "the average consumer, or even legal professional, can never

7  determine who or what was or is ultimately receiving the benefits

8  of any mortgage payments," (id. ¶ 23).  Apparently through the

9  "artifice" of MERS, defendants are alleged to have transformed

10  and "sabotage[d]" the legal system to prevent borrowers from

11  obtaining redress. (Id. ¶¶ 25-26.)  Although plaintiff alleges

12  that MERS is neither the original lender of plaintiff's loan nor

13  its current beneficiary or servicer, he contends that MERS "has

14  been and continues to knowingly and intentionally illegally and

15  fraudulently record mortgages and conduct business in California"

16  for some of the defendants. (Id. ¶ 27.)

17    Plaintiff brings claims for (1) breach of contract, (2)

18  negligence, (3) breach of the implied covenant of good faith and

19  fair dealing, (4) negligent inflection of emotional distress, (5)

20  intentional inflection of emotional distress, and (6) injunctive

21  relief.  Defendants now move to dismiss all claims for failure to

22  state a claim pursuant to Rule 12(b)(6).  (Docket No. 7.)

23  Plaintiff failed to file an opposition or statement of non-

24  opposition as required by Local Rule 230(c).

25  II.  Request for Judicial Notice

26    In general, a court may not consider items outside the

27  pleadings when deciding a motion to dismiss, but it may consider

28  items of which it can take judicial notice. Barron v. Reich, 13

4

F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial
notice of facts "not subject to reasonable dispute" because they
are either "(1) generally known within the territorial
jurisdiction of the trial court or (2) capable of accurate and
ready determination by resort to sources whose accuracy cannot
reasonably be questioned."  Fed. R. Evid. 201.  Judicial notice
may properly be taken of matters of public record outside the
pleadings.  See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504
(9th Cir. 1986).

       Defendants request that the court judicially notice
several recorded documents pertaining to the Penela Way property.
(See RJN Exs. 1-7.)  The court will take judicial notice of these
documents, since they are matters of public record whose accuracy
cannot be questioned.  See Lee v. City of Los Angeles, 250 F.3d
668, 689 (9th Cir. 2001).  The court will also take judicial
notice of the plaintiff's bankruptcy court filing, see RJN Ex. 8,
because it likewise is a matter of public record whose accuracy
cannot be questioned.  See Rosal v. First Fed. Bank of Cal., 671
F. Supp. 2d 1111, 1121 (N.D. Cal. 2009) (taking judicial notice
of bankruptcy filings).

III. Discussion

       To survive a motion to dismiss, a plaintiff must plead
"only enough facts to state a claim to relief that is plausible
on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
(2007).  This "plausibility standard," however, "asks for more
than a sheer possibility that a defendant has acted unlawfully,"
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a
complaint pleads facts that are 'merely consistent with' a

1  defendant's liability, it 'stops short of the line between

2  possibility and plausibility of entitlement to relief.'"  Id.

3  (quoting Twombly, 550 U.S. at 557).  In deciding whether a

4  plaintiff has stated a claim, the court must accept the

5  allegations in the complaint as true and draw all reasonable

6  inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

7  U.S. 232, 236 (1974), overruled on other grounds by Davis v.

8  Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

9  (1972).

10      A.   Claims Against MERS

11          "MERS is a private electronic database, operated by

12  MERSCORP, Inc., that tracks the transfer of the 'beneficial

13  interest' in home loans, as well as any changes in loan

14  servicers."  Cervantes v. Countrywide Home Loans, Inc., 656 F.3d

15  1034, 1038 (9th Cir. 2011).  Recently, the Ninth Circuit, "far

16  from concluding that MERS was some sort of sham organization,"

17  instead determined "that MERS was a legitimate organization."

18  Velasco v. Sec. Nat. Mortg. Co., 823 F. Supp. 2d 1061, 1073 (D.

19  Haw. 2011); see Cervantes, 656 F.3d at 1041-42 (dismissing with

20  prejudice plaintiff's fraud claim based on allegations "that MERS

21  members conspired to commit fraud by using MERS as a sham

22  beneficiary, promoting and facilitating predatory lending

23  practices through the use of MERS, and making it impossible for

24  borrowers or regulators to track the changes in lenders").

25  Despite the Complaint's extended exposition of MERS and its

26  alleged role in thwarting the legal system to the detriment of

27  borrowers, the Complaint's generalized and conclusory allegations

28  of conspiracy and subversion are insufficient to meet federal

1  pleading standards.

2  Moreover, plaintiff explicitly states that MERS is not

3  the beneficiary of his home loan and does not allege any other

4  role for MERS concerning the loan at issue, such as serving as

5  the loan servicer. (See Compl. ¶ 27.)  None of plaintiff's six

6  causes of action are directed at MERS, and he does not provide

7  any factual allegations giving rise to any specific claim against

8  MERS.  Accordingly, the court will dismiss the Complaint as

9  against MERS.

10  B.   Breach of Contract and Breach of the Implied Covenant

11       of Good Faith and Fair Dealing

12  The Complaint's first and third claims are entitled,

13  respectively, "Breach of Contract" and "Bad Faith/Breach of

14  Contract."  Thereunder, plaintiff alleges that he entered into a

15  contract with SLS and the other defendants. (Id. ¶ 11.)

16  "Implicit in the contract," he alleges, was the obligation "not

17  to markup charges for work they did not perform or to seek

18  payment for services which defendants were not entitled." (Id. ¶

19  12.)  Moreover, defendants "would, in good faith and in exercise

20  of fair dealing, deal with plaintiff's [sic] fair[ly] and

21  honestly." (Id. at ¶ 12.)  SLS is alleged to have breached the

22  contract and the implied covenant of good faith and fair dealing

23  by charging "marked-up fees for late charges." (Id.)

24  Plaintiff also alleges that SLS drastically inflated

25  late fees and penalties, lost paperwork, and took "exorbitant"

26  amounts of time to review documents. (Id. ¶ 18.)  SLS allegedly

27  also failed to modify plaintiff's loan after he "made a good

28  faith effort to apply for assistance" and threatened foreclosure

7

1  proceedings and sale of his home.  (Id.)

2          In order to state a claim for breach of contract, the
3  plaintiff must allege facts that demonstrate: 1) the existence of
4  the contract, 2) plaintiff's performance or excuse for
5  nonperformance of the contract, 3) defendant's breach, and 4)
6  resulting damages.  Armstrong Petrol. Corp. v. Tri Valley Oil &
7  Gas Co., 116 Cal. App. 4th 1375, 1391 n.6 (5th Dist. 2004).

8          It is not sufficient for a plaintiff to merely allege
9  conduct that could conceivably give rise to a claim.  Twombly,
10 550 U.S. at 547.  Rather, he must allege "enough facts to state a
11 claim to relief that is plausible on its face."  Id.  Here,
12 plaintiff has failed to properly allege the basis for his
13 contract claims.  It is possible that he means to allege that SLS
14 owed him a duty on the basis of the loan agreement that he
15 entered into with Ameriquest.  Even if plaintiff's bare pleadings
16 are construed in this manner, the court does not see how SLS can
17 be said to owe plaintiff a duty based upon a contract to which it
18 was not a party.

19         Nor has plaintiff identified any other specific
20 agreement creating a contractual relationship between him and
21 SLS.  To merely allege the existence of a contract is to make the
22 kind of conclusory allegation that Iqbal and Twombly disapproved.
23 See Zody v. Microsoft Corp., No. Civ. 12-CV-00942-YGR, 2012 WL
24 1747844, at *4 (N.D. Cal. May 16, 2012) (citing Twombly, 550 U.S.
25 at 555) ("To the extent that Plaintiff simply alleges a contract
26 existed, that allegation is itself conclusory because the
27 contract's formation and its terms (among other things) are
28 unclear").  Plaintiff fails to allege "a clear articulation of

8

the factual basis" for the contract, <u>id.</u>, such as specifying its
alleged terms or even indicating whether the contract was written
or oral, <u>see</u> <u>Snyder v. Wachovia Mortg.</u>, No. Civ. 1:10-1168 LJO
SKO, 2010 WL 2736945, at *4 (E.D. Cal. July 12, 2010) (dismissing
breach of contract claim where failure "to indicate whether the
alleged agreement was written or oral . . . further doom[ed] the
claim"); <u>Gilmore v. Lycoming Fire Ins. Co.</u>, 55 Cal. 123, 124
(1880) ("Where a party relies upon a contract in writing, and it
affirmatively appears that all the terms of the contract are not
set forth <u>in haec verba</u>, nor stated in their legal effect, but
that a portion which may be material has been omitted, the
complaint is insufficient.").

        Plaintiff also does not specify how the actions
allegedly taken by SLS, such as charging late fees and penalties
or failing to modify plaintiff's loan, breached any specific
provision of the alleged contract.  The Complaint is devoid of
allegations describing what work SLS did not perform that
plaintiff was charged for, or what activities SLS sought payment
for that it was unentitled to.  Without such allegations,
plaintiff cannot "nudge[] [his] claims across the line from
conceivable to plausible."  <u>Twombly</u>, 550 U.S. at 547.

         "Every contract imposes upon each party a duty of good
faith and fair dealing in its performance and its enforcement."
<u>Marsu, B.V. v. Walt Disney Co.</u>, 185 F.3d 932, 937 (9th Cir. 1999)
(quoting <u>Carma Developers, Inc. v. Marathon Dev. Cal., Inc.</u>, 2
Cal. 4th 342, 371 (1992)).  However, a "prerequisite for any
action for breach of the implied covenant of good faith and fair
dealing is the existence of a contractual relationship between

1  the parties, since the covenant is an implied term in the

2  contract." Smith v. City & Cnty. of San Francisco, 225 Cal. App.

3  3d 38, 49 (1st Dist. 1990).  As just explained, plaintiff has

4  failed to specify with sufficient particularity the contract

5  which he alleges SLS breached.  Identification of the contract is

6  essential "to determine what benefits were intended to flow from

7  it before deciding whether a party has acted to impair the right

8  of the other to receive those benefits." Rodriguez v. OneWest

9  Bank, No. Civ. 09-2361-PHX-NVW, 2010 WL 550760, at *3 (D. Ariz.

10 Feb. 16, 2010).  As is, the Complaint's conclusory allegations

11 fail to identify a contractual relationship in which to imply the

12 covenant of good faith and fair dealing.  Without a discernable

13 contractual basis for plaintiff's claims, it is impossible to

14 know whether the actions alleged to have been taken by SLS--such

15 as charging late fees, losing paperwork, or delaying document

16 review--injured plaintiff's rights under the contract.

17      Accordingly, the court will grant SLS's motion to

18 dismiss plaintiff's claims for breach of contract and breach of

19 the implied covenant of good faith and fair dealing.

20      C.  Negligence

21      To prove a cause of action for negligence, plaintiff

22 must show "(1) a legal duty to use reasonable care, (2) breach of

23 that duty, and (3) proximate cause between the breach and (4) the

24 plaintiff's injury." Mendoza v. City of Los Angeles, 66 Cal.

25 App. 4th 1333, 1339 (2d Dist. 1998).  "The existence of a legal

26 duty to use reasonable care in a particular factual situation is

27 a question of law for the court to decide." Vasquez v.

28 Residential Invs., Inc., 118 Cal. App. 4th 269, 278 (4th Dist.

1   2004).  Plaintiff bases its negligence cause of action on
2   allegations that defendants "owed a common law and statutory duty
3   of care to the Plaintiff's [sic] to ensure that Plaintiff's
4   contractual rights would be protected" and that he "would be
5   eligible for the HAMP program" or other loan modification
6   program.  (Compl. ¶ 14.)  Plaintiff also alleges injury from
7   defendants' "negligence due to the underwriting guidelines used
8   to administer and fund their loan."  (Id. ¶ 16.)

9           Plaintiff cites no authority for the proposition that
10  SLS owed a duty to not cause plaintiff harm in its capacity as a
11  loan servicer.  Cf. Castaneda v. Saxon Mortg. Servs., Inc., 687
12  F. Supp. 2d 1191, 1198 (E.D. Cal. 2009) (concluding that a loan
13  servicer owed no duty of care to the plaintiff).  In the broader
14  lending setting, "a financial institution owes no duty of care to
15  a borrower when the institution's involvement in the loan
16  transaction does not exceed the scope of its conventional role as
17  a mere lender of money."  Nymark v. Heart Fed. Sav. & Loan Assn.,
18  231 Cal. App. 3d 1089, 1096 (3d Dist. 1991).  Courts have
19  extended this rule to loan servicers.  See, e.g., Saugstad v. Am.
20  Home Mortg. Servicing Inc., No. Civ. 2:09-CV-03516 JAM KJM, 2010
21  WL 2991724, at *4 (E.D. Cal. July 29, 2010); Tsien v. Wells Fargo
22  Home Mortg., No. Civ. 09-04790 SI, 2010 WL 2198290, at *5 (N.D.
23  Cal. May 28, 2010).  Thus, as the servicing company to the
24  lender, SLS owes no duty to plaintiff.  Because the Complaint
25  fails to state that SLS has breached a cognizable legal duty, the
26  court will grant defendants' motion to dismiss plaintiff's cause
27  of action for negligence.

28          D.   Negligent Infliction of Emotional Distress

1    The negligent infliction of emotional distress is not
2  an independent tort, but rather derives from the tort of
3  negligence.  <u>Marlene F. v. Affiliated Psychiatric Med. Clinic,</u>
4  <u>Inc.</u>, 48 Cal.3d 583, 588 (1989).  Thus, all the traditional
5  elements of duty, breach of duty, causation, and damages must be
6  proven by plaintiff. <u>See</u> <u>id.</u>

7    Plaintiff styles this cause of action "Negligent
8  Infliction of Emotional Anguish" and alleges that SLS breached
9  its duty to plaintiff "by failing to communicate with Plaintiff
10 in regards to modifying the [l]oan, acting negligent, and
11 creating an alleged deficiency status," (Compl. ¶ 30), as well as
12 by putting plaintiff into a "state of emotional panic" by sending
13 him "notices to accelerate the note and of his potentially being
14 foreclosed upon and sold," (<u>id.</u> ¶ 31).

15   As explained, lender-loan servicer relations do not
16 usually engender a duty supporting a negligence cause of action.
17 <u>See</u> <u>Palestini v. Homecomings Fin., LLC</u>, Civ. No. 10CV1049-MMA,
18 2010 WL 3339459, at *7 (S.D. Cal. Aug. 23, 2010).  Here,
19 plaintiff fails to allege that SLS engaged in any conduct that
20 exceeded the traditional role of a loan servicer.  Because
21 plaintiff has failed to establish the assumption of a duty of
22 care on the part of SLS, the court must grant SLS's motion to
23 dismiss plaintiff's negligent infliction of emotional distress
24 claim.

25   E.   <u>Intentional Infliction of Emotional Distress</u>

26   Under California law, to state a cause of action for
27 intentional infliction of emotional distress, a plaintiff must
28 plead: "(1) extreme and outrageous conduct by the defendant with

12

1  the intention of causing, or reckless disregard of the

2  probability of causing, emotional distress; (2) the plaintiff's

3  suffering severe or extreme emotional distress; and (3) actual

4  and proximate causation of the emotional distress by the

5  defendant's outrageous conduct." Christensen v. Superior Court,

6  54 Cal. 3d 868, 903 (1991) (quoting Davidson v. City of

7  Westminster, 32 Cal. 3d 197, 209 (1982)). Conduct is "extreme

8  and outrageous" when it "exceed[s] all bounds usually tolerated

9  by a decent society." Palestini, 2010 WL 3339459, at *5 (quoting

10 Agarwal v. Johnson, 25 Cal. 3d 932, 946 (1979)). Emotional

11 distress is "severe" when it is "of such substantial quantity or

12 enduring quality that no reasonable man in a civilized society

13 should be expected to endure it." Fletcher v. W. Nat'l Life Ins.

14 Co., 10 Cal. App. 3d 376, 397 (4th Dist. 1970). The defendant's

15 conduct must have been intended to inflict injury or be done with

16 the realization that injury will result. Christensen, 54 Cal. 3d

17 at 903. Moreover, the defendant's conduct must have been

18 "directed at the plaintiff, or occur in the presence of a

19 plaintiff of whom the defendant is aware." Id.

20       Incorporating all the allegations in his Complaint,

21 plaintiff entitles this claim "Intentional Infliction of Mental

22 Anguish" and alleges that SLS's conduct "was extreme and

23 outrageous and an abuse of the position of the Defendants."

24 (Compl. ¶ 33.) Plaintiff also alleges that SLS engaged "in a

25 negligent and unlawful course of conduct solely to wrongfully

26 obtain money and property from Plaintiff." (Id.)

27       The Complaint fails to allege any outrageous conduct on

28 the part of SLS to support intentional inflection of emotional

                              13

1  distress.  Plaintiff does no more than allege that SLS engaged in
2  conduct that is generally accepted in debt collection and the
3  foreclosure process, such as increased fees or telephone calls to
4  the debtor alerting him to the risks associated with failing to
5  make due payments.  See Ramirez v. Barclays Capital Mortg., No.
6  Civ. 10-1039 LJO SKO, 2010 WL 2605696, at *11 (E.D. Cal. June 28,
7  2010) (noting that the conduct associated with debt collection
8  and the foreclosure process "is inherently stressful for
9  debtors"); Ross v. Creel Printing & Publ'g Co., 100 Cal. App. 4th
10 736, 745 (1st Dist. 2002) ("In the context of debt collection,
11 courts have recognized that the attempted collection of a debt by
12 its very nature often causes the debtor to suffer emotional
13 distress.").  Moreover, the refusal to grant a loan modification,
14 even after meeting with the borrower, does not qualify as
15 outrageous behavior.  Davenport v. Litton Loan Servicing, LP, 725
16 F. Supp. 2d 862, 884 (N.D. Cal. 2010).  Accordingly, the court
17 will grant SLS's motion to dismiss plaintiff's intentional
18 infliction of emotional distress claim.

19     F.   Injunctive Relief
20          Under California law, requests for injunctive relief
21 have been consistently classified as remedies and not valid
22 causes of action in their own rights.  See, e.g., Shell Oil Co.
23 v. Richter, 52 Cal. App. 2d 164, 168 (4th Dist. 1942)
24 ("Injunctive relief is a remedy and not, in itself, a cause of
25 action.").  Accordingly, the court will grant SLS's motion to
26 dismiss plaintiff's sixth cause of action.

27          IT IS THEREFORE ORDERED that defendants' motion to
28 dismiss be, and the same hereby is, GRANTED.

14

1        Plaintiff has ten days from the date of this Order to

2   file an amended complaint, if he can do so consistent with this

3   Order.[4]

4   DATED:    October 9, 2012

5

6   _____
    WILLIAM B. SHUBB

7   UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

27        [4]   The court does not adopt the Findings and
     Recommendations of the Magistrate Judge, filed July 23, 2012
28   (Docket No. 16), and issues this Memorandum and Order in lieu
     thereof.

15